UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GUILLERMO SEGOVIA,<br>JUAN JOSE SEGOVIA,<br><br>    Defendants. | Criminal No. 08-0018- 02, 03<br>(Mag. Crim. No. 08-0019 M-02, 03)<br>CKK/DAR |

**MEMORANDUM OF FINDINGS OF FACT
AND STATEMENT OF REASONS IN
SUPPORT OF ORDER OF DETENTION**

**I.  INTRODUCTION**

Defendants Guillermo Segovia and Juan Jose Segovia are charged by indictment[1] with one count of unlawfully, knowingly and intentionally distributing 500 grams or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1), and one count of unlawfully, knowingly and intentionally possessing with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1).  A consolidated preliminary hearing and detention hearing, conducted by the undersigned United States Magistrate Judge, commenced on January 30, 2008, and was concluded on February 4, 2008.[2]  Upon consideration of the evidence adduced

---

[1] Defendants' arrest was initially initiated by a Criminal Complaint on January 15, 2008.

[2] On February 1, 2008, after the commencement of the consolidated preliminary hearing and detention hearing, the Grand Jury returned an indictment against the Defendants.  Consequently, the February 4, 2008 proceedings were limited to the completion of the detention hearing.

United States v. Segovia, et al.                                                                                                  2

at the hearing, the proffers and arguments of counsel and the entire record herein, Defendants were ordered held without bond pursuant to 18 U.S.C. § 3142(e). The findings of fact and statement of reasons in support of the Order of Detention follow.

## II.  THE BAIL REFORM ACT

The Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq. (hereinafter "the Act"), provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). Thus, danger to the community alone is a sufficient basis upon which to order pretrial detention. United States v. Salerno, 481 U.S. 739, 755 (1987); United States v. Simpkins, 826 F.2d 94, 98 (D.C. Cir. 1987); United States v. Perry, 788 F.2d 100, 113 (3d Cir. 1986); United States v. Sazenski, 806 F.2d 846, 848 (8th Cir. 1986).

Where the government seeks pretrial detention on the ground that no condition or combination of conditions will reasonably assure the appearance of defendant as required, it has the burden of establishing by a preponderance of the evidence that the defendant will flee before trial if released. United States v. Vortis, 785 F.2d 327, 328-29 (D.C. Cir.), cert. denied, 479 U.S. 841 (1986). The judicial officer must determine that "it is more likely than not that no condition or combination of conditions will reasonably assure an accused's appearance." United States v. Westbrook, 780 F.2d 1185, 1188-89 (5th Cir. 1986).

In determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer shall take into account the available information concerning (1) the nature and

United States v. Segovia, et al.                                                                                                  3

circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community which would be posed by the defendant's release.  18 U.S.C. § 3142(g).

    A rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community arises if the judicial officer finds that there is probable cause to believe that the defendant committed an offense under the Controlled Substances Act, 21 U.S.C. § 801 et seq., for which a maximum period of incarceration of ten years or more is prescribed.  18 U.S.C. § 3142(e).  An indictment is sufficient to demonstrate probable cause for purposes of 18 U.S.C. § 3142.  See United States v. Vargas, 804 F.2d 157, 163 (1st Cir, 1986); United States v. Suppa, 799 F.2d 115, 117 (3rd Cir. 1986); United States v. Mosuro, 648 F. Supp. 316, 318 (D.D.C. 1986).

### III.  DISCUSSION

    The government's sole witness was Detective Thomas Smith of the Metropolitan Police Department's Narcotics and Special Investigations Division.  Detective Smith testified that on January 15, 2008, in the Safeway parking lot on 6500 Piney Branch Road, N.W.,  he was a member of the arrest team which arrested the Defendants and a co-defendant during the culmination of a purchase by an undercover officer of a quantity of cocaine.  Detective Smith testified that a confidential informant notified the Narcotics Unit, on January 14, 2008, about a deal he made to purchase two kilograms of cocaine.   Detective Smith testified that the

United States v. Segovia, et al.                                                                                                  4

confidential informant told the MPD that on December 10, 2007, he met with a male subject who represented that he sold cocaine in large quantities and could provide the informant with the drug after the holidays.  The informant described in detail how he and the male subject maintained contact, by telephone, to discuss a date on which the cocaine would be available.  Detective Smith testified that the informant told MPD officers that on January 12, 2008, the male subject telephoned him to inform him that the cocaine would be arriving on January 14, 2008.  The informant arranged to purchase the two kilograms of cocaine on January 15, 2008 at 6:00 p.m.  The witness stated that the confidential informant thereafter notified the narcotics unit of the arranged purchase and was accompanied by a undercover MPD officer to consummate the deal.

     Detective Smith testified that nearly three hours before the scheduled meeting, the informant received a telephone call from an individual who stated that he was the male subject's brother, and that the male subject was unable to meet with the informant.  The brother stated that he would consummate the deal for the male subject at a purchase price of $24,000 per kilogram.  Detective Smith testified that the informant and the undercover officer waited in an undercover vehicle, at the designated time, for the male subject's brother in the Safeway parking lot on 6500 Piney Branch Road, N.W.  Detective Smith stated that the Defendants arrived soon thereafter in a white Jeep Cherokee.  Detective Smith noted that the confidential informant did not identify any of the three men as the male subject with whom he originally met in December, 2007.  Detective Smith testified that, through his surveillance and subsequent investigation, he learned that Defendant Guillermo Segovia was the driver of the SUV; co-defendant Nelson Alberto Ramirez was in the front passenger seat; and Defendant Juan Jose Segovia was seated in the rear seat behind the driver.  Detective Smith further testified that the three men got out of the SUV and

approached the informant's vehicle. Detective Smith stated that the undercover officer exited the passenger seat and sat behind the informant in the rear seat. Detective Smith testified that, according to his investigation, co-defendant Ramirez sat in the passenger seat, Defendant Guillermo Segovia sat in the rear seat immediately behind Ramirez, and that Defendant Juan Segovia was told by the two co-defendants to get into the informant's vehicle. Detective Smith testified that Defendant Juan Jose Segovia subsequently sat in the third rear row within the informant's car. Detective Smith testified that Defendant Guillermo Segovia handed a black plastic bag to Defendant Ramirez, who opened the bag and pulled out two bundles of compressed white powder wrapped in brown and clear tape. Detective Smith stated that both Defendant Guillermo Segovia and co-defendant Ramirez told the informant that, "This is good stuff." The informant gave Defendant Ramirez $6,000 in cash to count, and informed the Defendants that the balance of the money was in the rear of the vehicle. The undercover officer then stepped out of the car and signaled the arrest team. All three men were subsequently arrested. MPD recovered the two bundles of compressed white powder and the $6,000 from the undercover car.

    Detective Smith testified that during a subsequent search of the white Jeep Cherokee, MPD recovered (1) $68,000 in the floor of the rear seat behind the driver where Defendant Juan Jose Segovia had previously been seated, and (2) another kilogram of compressed white powder packaged in the same manner as that offered to the informant in the rear of the vehicle. Detective Smith further testified that all three kilograms of compressed white powder field tested positive for cocaine. Detective Smith testified that the Narcotics Unit worked previously with the

United States v. Segovia, et al. 6

confidential informant on five other occasions, which led to the arrest of numerous individuals who were charged with possessing with the intent to distribute cocaine.

During cross-examination by counsel for Defendant Guillermo Segovia, Detective Smith testified that the handwritten notes he penned, while on the scene of the arrest, concerning the location of Defendant Guillermo Segovia in the undercover vehicle were inconsistent with his prior testimony and the results of his investigation with the undercover MPD officer.

In further support of the government's request for pretrial detention, counsel for the government proffered statements made to law enforcement officers by co-defendant Ramirez. According to counsel for the government, co-defendant Ramirez stated that he and Defendants Guillermo and Juan Jose Segovia traveled to New York to pick up five kilograms of cocaine, transported it back to Washington, and that the three of them sold two kilograms of cocaine immediately prior to the events which resulted in their arrest. Counsel for the government also proffered that Defendant Guillermo Segovia received probation without judgment in a 1998 Montgomery County, Maryland case in which he was charged with second degree assault. Finally, government counsel proffered that both Defendants are undocumented immigrants, but conceded that no Immigration and Customs Enforcement warrant had been issued.

Defendant Guillermo Segovia offered no evidence. Through his counsel, Defendant Guillermo Segovia proffered that he has lived in the area for nearly two decades; has a home in Silver Spring, Maryland where he resides with his wife and two children; and is currently employed, as he has been over the previous two decades, with a construction company.

Defendant Juan Jose Segovia also offered no evidence. Through his counsel, he proffered that he has been living in the area for a long time; is married and currently expecting his third

United States v. Segovia, et al.                                                                                                          7

child; is currently employed with a construction company; and has siblings living in the Washington, DC area. Defendant Juan Segovia's counsel further proffered that he is not a danger to the community; has no prior arrest or convictions; and is willing to surrender his passport to the court.

### IV.  **FINDINGS OF FACT**

Upon consideration of the factors enumerated at Section 3142(g) of the Act, the undersigned finds by clear and convincing evidence that no condition of release or combination of conditions would reasonably assure the safety of the community.  First, the nature and circumstances of the offense charged indicate that the Defendants were engaged in the distribution of significant quantities of cocaine.

Second, for the reasons offered by counsel for the government, the undersigned finds that the weight of the evidence against the Defendants is compelling.

Finally, the undersigned is satisfied that the toll which distribution of cocaine has taken and continues to take upon this community is well-documented and need not be repeated here. The undersigned finds that the evidence of the Defendants' significant involvement in the distribution of controlled substances demonstrates that their release would pose a danger to the community, and that they are not amenable to community supervision.

The undersigned has carefully considered the Defendants' proffer, and finds that while it is sufficient to rebut the presumption of fugitivity, it is insufficient to rebut the presumption of dangerousness.  United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985).

### V.  **CONCLUSION**

United States v. Segovia, et al.                                                                                               8

      On the basis of the foregoing findings of fact and reasons, Defendants will be held without bond pursuant to the February 4, 2008 Order of Detention.

February 14, 2008                                                       /s/
                                                                     DEBORAH A. ROBINSON
                                                                     United States Magistrate Judge

February 4, 2008
NUNC PRO TUNC