UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No. 08-018 (CKK) |
| | : | |
| v. | : | |
| | : | |
| JUAN JOSE SEGOVIA, | : | Sentencing Hearing: August 8, 2008 |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits its memorandum in aid of sentencing, and moves this Court to impose a sentence upon the defendant, Juan Jose Segovia, at the low end of the Sentencing Guidelines. In support of this motion, the United States proffers the following points and authorities, as well as any others that may be cited at the sentencing hearing in this matter.

*Discussion*

*The Circumstances of the Offense*

On January 15, 2008, in the parking lot of a Safeway grocery store located in the 6500 block of Piney Branch Road, Northwest, Washington, D.C., the defendant did knowingly and intentionally distribute 500 grams or more of cocaine.

Earlier that day, the defendant's brother, Nelson Ramirez, called him and told him that he had a large quantity of cocaine he needed to sell. Another of defendant's brothers, Guillermo Segovia, made some phone calls to try to locate a buyer for the cocaine. Nelson Ramirez eventually called the defendant back and said that he needed a ride to sell the cocaine.

Juan and Guillermo Segovia picked up Nelson Ramirez in Silver Spring, Maryland, in a

white Jeep Cherokee bearing Maryland license plates belonging to their employer.

At about 6:40 p.m., the defendant and his brothers entered Washington D.C. with the intent to unlawfully distribute 500 grams or more of cocaine. They drove to a Safeway parking lot on Piney Branch Road, Northwest, Washington DC. Co-defendant Nelson Ramirez exited the white Jeep and entered the front passenger seat of an undercover police van. Seated in the driver's seat was a confidential informant who had previously set-up the transaction over the telephone with Nelson Ramirez.

Co-defendant Guillermo Segovia exited the white Jeep Cherokee and entered the police van. Co-defendant Guillermo Segovia brought with him a black plastic bag containing approximately two kilograms of white powder cocaine.

The defendant suggested that the men should move to another location, specifically the parking lot of an apartment building, in order to complete the transaction in a safer, less public, setting. After the confidential informant stated that the transaction would take place right there, Juan Segovia then joined the others in the undercover police van.

Guillermo Segovia then handed the black plastic bag to Nelson Ramirez in the front seat. Ramirez opened the bag and handed the two packages of cocaine to the confidential informant. Juan Segovia and Guillermo Segovia commented on the high quality of the cocaine.

The confidential informant gave $6000.00 in pre-marked police department funds to Nelson Ramirez. At that time, the undercover officer who was inside the van indicated that she would retrieve the additional money to complete the transaction. When the undercover officer exited the vehicle, nearby arrest teams converged upon the vehicle and placed the three defendants under arrest.    The two kilograms of cocaine were observed sitting on the console between the two

front seats. The $6000.00 in pre-recorded funds was recovered from the front passenger seat and floorboard. Detectives searched the white Jeep Cherokee and recovered $68,500.00 on the floorboard where Juan Segovia had been seated, and some additional cocaine inside the rear compartment of the Jeep. Co-defendant Ramirez was searched incident to arrest and he had $2000.00 on his person.

The cocaine was sent to the DEA laboratory for testing and it was determined to be cocaine hydrochloride at 88.8% pure.

Co-defendant Nelson Ramirez provided a post-arrest statement to police acknowledging his involvement in the above offense, as well as the involvement of his two brothers.

*Procedural Background*

After his arrest, a Grand Jury handed up an indictment charging the defendant with two offenses. The indictment charged the defendant with Unlawful Distribution of 500 Grams or More of Cocaine and Unlawful Possession With Intent to Distribute 500 Grams or More of Cocaine.

The defendant was arraigned on February 14, 2008, and expressed an interest in resolving his case short of trial almost immediately. On April 14, 2008, the defendant entered a plea of guilty to Count One of the indictment; Count Two stands to be dismissed at sentencing.

*The Defendant's Guidelines Range*

The defendant has met the requirements of § 5C1.2, as he met with the government on May 8, 2008, and provided all information and evidence he knows concerning the offense. Moreover, the defendant accepted responsibility by taking an early plea and the government therefore moves

the Court to award the defendant a three-level decrease. The base offense level computes to a level 21, with a Criminal History category of I, making his guidelines range 37 - 46 months.

*The History and Characteristics of the Defendant*

The defendant was twenty-nine years old when he committed the instant offense. The defendant was born in El Salvador, but has been in the United States for over 10 years. The defendant appears to have no prior convictions, either as adult or a juvenile, nor any reported arrests. The defendant seems to have been introduced into this criminal scenario by his brother Nelson Ramirez, though he was indeed a willing participant. Mr. Ramirez called his brothers to help him locate a buyer, and asked them to give him a ride during the transaction.

The defendant lived with his common-law spouse and three children prior to his incarceration. The defendant apparently worked construction jobs as a "day-laborer" prior to his arrest. Other than these facts, little is known about the defendant.

*Recommendation*

The defendant does not deserve a two-level decrease based on his role in the offense. Without the defendant's assistance as an aider and abettor, the transaction would not have occurred. It is clear from his conduct that he intentionally participated in this transaction as something he wished to bring about. He even went so far as to suggest a more private location in which to conduct the sale; clearly, he was aware of the illicit nature of what he was doing. The nature and circumstances of the offense call for a period of incarceration consistent with the Sentencing Guidelines. Cocaine is a powerfully debilitating narcotic that costs the U.S. billions of dollars every

year to combat. Hopefully, a prison sentence will act as a deterrent to others who learn about the defendant's fate and are currently engaged in or considering trafficking in narcotics. Though the defendant may be deported upon completion of any prison term, should he manage to remain in the country, a substantial period of incarceration may convince him that further law violations are imprudent.

In considering the seriousness of the offense for which the defendant took responsibility, to provide just punishment for such offense, and to afford adequate deterrence for such conduct, the Government recommends a period of incarceration at the low end of the Sentencing Guidelines.

**WHEREFORE**, the United States respectfully moves that the Court to impose a sentence in the instant case consistent with the information contained in the Presentence Investigation Report and the information and recommendations herein.

                Respectfully submitted,

                JEFFREY A. TAYLOR
                United States Attorney
                D.C. Bar No.: 498-610

By:    /s/
        ERIC P. GALLUN
        Assistant United States Attorney
        Organized Crime and Narcotics Trafficking Section
        D.C. Bar No. 462025
        555 Fourth Street NW
        Room 4122
        Washington, DC 20530
        (202) 514-6997
        Frederic.Gallun@usdoj.gov